CLIMATIC AIR DISTRIBUTORS OF SOUTH TEXAS, ET AL
v. CLIMATIC AIR SALES, INCORPORATED

No. A-7989. Decided April 19, 1961
Rehearing overruled May 17, 1961
(345 S. W. 2d Series 702)

238

*Barrow, Bland & Rehmet,* of Houston, *Spruiell, Lowry, Potter, Lasater & Guinn,* of Tyler, for petitioners.

*Goodwin & Cavin,* of Tyler, for respondent.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This suit involves the T e x a s antitrust statutes. It was brought by Climatic Air Sales, Inc., herein called the manufacturer, to recover the purchase price of automobile air-conditioning units sold by it to Climatic Air Distributors, owned by Bland and Wilson, herein called Bland. Bland filed a motion for summary judgment alleging that the contract was void because it violated the Texas antitrust laws. He also filed a cross action alleging a breach of contract by the manufacturer. The trial court sustained Bland's motion for summary judgment, and Bland dismissed his cross action. That judgment was reversed by the Court of Civil Appeals on the grounds that the contract was ambiguous and that issues of fact were raised as to whether the contract violated the antitrust statutes. 336 S.W. 2d 461. We think the trial court correctly held that the agree-

ment does violate the antitrust laws, and hence we reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

These are the facts:

The manufacturer and Bland entered into a written agreement whereby:

1. Bland agreed to act as distributor of the manufacturer's air-conditioning units "in the following counties of the State of Texas," naming them.

2. Bland would use his best efforts to promote the sale of the manufacturer's units "throughout the territory," and the manufacturer agreed to assist by furnishing materials which were available for advertising.

3. The agreement was to remain in force for three years. But if Bland failed to sell 400 units in Corpus Christi, Austin and San Antonio during the first year, then the manufacturer had the right to cancel the agreement "as to these areas." The counties to be released are set out.

4. "J. W. Durrett, individually, and as Executive Officer of the company handling Climatic Air (the manufacturer) agrees to turn over to Bland . . . *all* inquiries and orders for the above described area received for Climatic Air and *that we will refrain from appointing other distributors in the area hereinabove set out during the term of this contract.*" (Emphasis ours.)

5. The terms of sale were that "you [referring to Bland] will remit to Climatic Air upon receipt of units cash less 2% if paid at the time of delivery to you."

6. "It is further understood * * * that any defective parts * * * may be returned by you [Bland] for credit * * * You [Bland] shall pay the freight one way and Climatic Air will pay the freight the other way."

The suit filed by the manufacturer alleged the delivery to Bland of units for which Bland had not paid. It was filed in the form of an action on a sworn account. The petition alleges a sales, not an "exclusive agency." Bland answered that the contract was void because it violated the antitrust laws.

He filed a copy of the contract with his motion for summary judgment. He also filed, in the alternative, a cross action in which he alleged that the manufacturer had breached the contract in that it had sold units to others in the area. He alleged that the manufacturer had sold identical units to others in the area under a different brand name; that because of this competition in violation of the agreement, Bland had lost the sales of many units and had been forced to reduce the "suggested retail price" on the units which he did sell. He contended that he had been damaged in an amount greater than the amount for which the manufacturer sued him. As stated, the trial court sustained Bland's motion for summary judgment, denying the manufacturer a recovery because the statute says, "Any contract or agreement in violation of any provision of this subdivision [the antitrust laws] shall be absolutely void and not enforcible either in law or in equity."[1]

The portion of the antitrust laws which are here involved read:

"Art. 7426. 'Trusts'

"A 'trust' is a combination of capital, skill or acts by *two or more* persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes:

"1. *To create, or which may tend to create, or carry out restrictions in trade or commerce* * * * or to create or carry out restrictions in the free pursuit of any business authorized or permitted by laws of this State. (Emphasis ours.)

"* * *.

"5. To make * * * or carry out any contract * * * to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity * * * ."

"Art. 7428. Conspiracies against trade.

"Either or any of the following acts shall constitute a conspiracy in restraint of trade:

---

1. Article 7437. All statutes referred to are from Vernon's Texas Civil Statutes Annotated.

"1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise . . . enter into an agreement or undertaking to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

■ We think the agreement is unambiguous and that it comes within the holding of Grand Prize Distributing Co. v. Gulf Brewing Co., (1954) 267 S.W.2d. 906, in which a writ of error was refused by this Court. That decision reviews the opinions of this Court[2] and holds that the granting and accepting of the exclusive right to sell a manufacturer's product within a given territory is made a violation. of the antitrust statutes; that the Legislature has fixed this policy for the State; that the Legislature has clearly provided that any agreements in violation of the statutes shall be void and unenforceable; and that it is the duty of the Court to enforce the statute as it is written. This was also the holding of this Court in Patrizi v. McAninch (1954), 153 Tex. 389, 269 S.W. 2d 343.

Under the agreement, Bland agreed to be the "distributor" [not just "a" distributor, or one of the distributors], and to promote the sale of the manufacturer's product "throughout the territory," the territory being certain-named counties in South Texas. If he failed to accomplish a specified number of sales

---

2. Included as a basis for the opinion in the *Grand Prize* case were these cases:

Anheuser-Busch Brewing Ass'n v. Houck, 88 Tex. 184, 30 S.W. 869, at 870:

"The contract between the brewing company and Houck & Dieter bound the company to sell to the latter, and to sell to no other dealer in the city of El Paso. It is clear, we think, that these stipulations were well calculated to aid Houck & Dieter and their associates in effecting the purpose of the unlawful combination. They gave the combination a monopoly of the sale in the city of El Paso of the product of the plaintiff's brewery, and materially assisted the parties to the illegal contract in carrying out their object of ·controlling the market for sale of beer in bulk in that city."

American Brewing Ass'n v. Woods (Tex. Comm. App. 1919) 215 S.W. 448, at 450:

"This statute clearly denounces as unlawful an agreement between any two or more persons, firms, corporations, or associations, who are engaged in buying or selling any article of merchandise, to refuse to sell to any other person any such article of merchandise, product, or commodity. This transaction falls literally within the language of the statute. The brewing company was engaged in the sale of beer, and Woods was engaged in both the purchase and sale of beer, and the effect of the contract between them was that the brewing company should sell its products to Woods, and should refuse to sell to any other person at Orange. We are not concerned with the policy of the law. The courts must enforce it as written. To hold in this case that the contract is not in violation of law is to permit the law to be violated with impunity, by designating as an agency that which is in fact a sale."

in Corpus Christi, Austin, and San Antonio within a year, the manufacturer had the right to take certain counties from Bland. The manufacturer agreed to turn over to Bland "*all* inquiries and orders" from the described area. The word "all" is significant and inclusive.

The manufacturer further agreed that "we will refrain from appointing any other distributors in the area" during the life of the contract. The manufacturer argues that the word "we" is ambiguous. We do not agree. Where Bland is referred to in the contract as set out above, the word "you" is used: "you" [Bland] will remit to Climatic Air in a particular manner; "you" shall pay the freight one way and Climatic Air [we] will pay the freight the other; and "you" may return defective parts for credit. Moreover, the agreement is in the form of a letter from the manufacturer [we] to Bland [you]. And grammatically, the particular sentence reads: "J. W. Durrett, individually, and as Executive Officer of the company handling Climatic Air agrees (singular) * * * that we refrain from appointing other distributors * * * ."

It is argued, and the Court of Civil Appeals held, that the word "orders" is ambiguous. The manufacturer agreed to turn over *all orders*, without qualification, to Bland. Taken in context, we do not agree. It can only refer to orders for the purchase and sale of the air-conditioning units which were the subject of the agreement.

■ Counsel for the manufacturer contended on oral argument that there was no violation of the antitrust laws if several distributors were involved; that the manufacturer agreed to appoint no "*other* distributors" within the area; and that the contract is susceptible of the construction that there may have already exised several dealers, and the agreement was not to appoint any more. We do not agree. The statutes, as italicized above, refer to *two or more* persons, not just two persons. An agreement between two or more persons, a manufacturer and several distributors, which comes within the terms of the statutes would violate the statues. Moreover, under the terms of the agreement, the manufacturer agreed to turn over *all* orders and inquiries to Bland. Since all orders received in the territory were to be turned over to Bland, the manufacturer could not comply with the contract if it filled the orders itself or permitted others to do so.

■ Counsel for the manufacturer argues, and the Court of Civil Appeals held, that the pleadings of Bland in his cross action constituted an admission that the agreement was not for an exclusive dealership in the assigned territory. We do not so construe the pleadings. The pleadings allege that the manufacturer breached his agreement and sold units to others within the territory, thus damaging Bland. Also, the pleadings were in the alternative. Alternative pleadings cannot ordinarily be used as an admission against the pleader on his primary defense under our practice. Rule 48, Texas Rules of Civil Procedure.

It is further argued that the pleadings in the cross action that the manufacturer did sell to others within the territory constitutes a construction by the parties which lends meaning to the contract and creates an issue of fact as to the meaning of the agreement. We do not believe this is a correct answer for two reasons: (1) the construction was unilateral, by the manufacturer only; and (2) evidence under such a contention would be admissible only if the contract were ambiguous. We have held that it is not.

The cases cited by counsel for the manufacturer for the proposition that the agreement does not violate the antitrust laws are mainly "requirement contracts" cases,—cases in which a person agrees to buy, as an ultimate consumer, from a particular person all of a certain product that he needs in his business, or cases in which a person agrees to sell his entire output to a particular purchaser. We need only say here that the agreement here in question is not such a contract. The manufacturer did not agree to sell to Bland all of his output and Bland did not agree to buy from the manufacturer all the air-conditioning units he needed. Rather, as we construe the contract, Bland agreed to purchase for resale air-conditioning units in a specified territory, and the manufacturer by agreement contracted that all of the orders for the sale of the units would be handled by Bland who would be its distributor in the territory.

Finally, counsel for the manufacturer suggests that the rule laid down by this Court in Anheuser-Busch Brewing Ass'n v. Houck (1895), 88 Tex. 184, 30 S.W. 869, cited above in Note 2, has been relaxed, and that the courts are now applying a "rule of reason," meaning that the courts will, despite the wording of the agreement, admit evidence to see whether in fact competition has been restricted. This argument was advanced and overruled in Grand Prize Distributing Co. v. Gulf Brewing

Co. (1954), 267 S.W. 2d 906, writ refused. We adhere to that decision.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.