Lee ALBIN, Appellant,

v.

ISOTRON CORPORATION et al., Appellees.

No. 7843.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 3, 1967.

Rehearing Denied Dec. 12, 1967.

Annette Stewart, Thomas R. Hartnett, III, Parnass, McGuire & Handy, Irving, for appellant.

Grover Hartt, Jr., Tobolowsky, Hartt, Schlinger & Blalock, June R. Welch, Dallas, for appellees.

CHADICK, Justice.

This action was instituted to recover damages for and to enjoin a breach of an exclusive distributorship contract. The defendant's motion for summary judgment denying relief of any nature was granted and plaintiff has appealed. The trial court judgment is affirmed.

Appellee John McDonald owns the patent to and manufactures a device saleable as an exercising or reducing machine. In August or September, 1964, he and appelleee, Mrs. Lee Albin, wife of Dean Albin, commenced a marketing operation that continued until late 1964 or early 1965, when McDonald, according to Mrs. Albin, told her that he had sold the patented device's national sales right to W. E. Causey and Lee Causey. Shortly afterwards negotiations between Mrs. Albin and Lee Causey resulted in a written agreement between Mrs. Albin and Electronic Exercise Corporation dated May 7, 1965, covering Mrs. Albin's role with that corporation for a twenty year period in distributing and marketing the machine. Lee Causey appears as President of Electronic Exercise Corporation and his father, W. E. Causey, as Operation Manager. The preface to the instrument expressed the desire of the corporation to make Mrs. Albin its agent in distributing and promoting the sale of the machines and one of the contractual provisions appointed her Vice President of Electronic Exercise Corporation.

On or about March 1, 1966, Isotron Corporation was organized with W. E. Causey and Lee Causey, according to Mrs. Albin, as its only officers and shareholders. The following written agreement was entered

into between Mrs. Lee Albin and Isotron Corporation, to-wit:

## "EXCLUSIVE DISTRIBUTORSHIP AGREEMENT

"This agreement is made this 28th day of March, 1966, by and between Isotron Corporation, a Texas corporation in Dallas County, Texas, and Lee Albin, an individual residing in Dallas County, Texas, hereinafter called Distributor.

"Isotron Corporation is the sole owner of the sales and distribution rights to an electrically operated device, known as Isotron exercising and reducing machine, for the entire state of Texas. Isotron desires to obtain a distributor to distribute and market such device throughout the entire state of Texas, except for Dallas County, in the state of Texas, and distributor is prepared to expend the distributor's own funds for the purpose of promotion, building, and maintaining of retail dealers.

"Therefore, for and in consideration of the mutual benefits flowing to each of the parties by virtue of the terms of this agreement, the parties agree as follows:

## "ISOTRON CORPORATION'S OBLIGATIONS

"1. Isotron Corporation hereby appoints Distributor as the exclusive distributor for the distribution and sale of Isotron exercising and reducing machines for the entire state of Texas, except for Dallas County, in the state of Texas, for a term of twenty (20) years. This distributorship conferred upon Distributor shall also extend to and cover devices which are essentially the same as the Isotron machines, regardless of whether such devices are manufactured under the same name or not, and regardless of whether such devices represent improvements or changes in the design of the original Isotron machines.

"2. Isotron Corporation agrees to sell to Distributor such machines when and as needed by Distributor and in the quantities needed to fill demand created by Distributor. In this connection, it is recognized by Isotron Corporation that Distributor will expend from time to time considerable amounts of money and time for the purpose of developing consumer demand for such machines and an organization of dealers for the purpose of selling such machines to the ultimate consumer; therefore, any failure on the part of Isotron Corporation to sell to Distributor such machines in accordance with the terms of this agreement will result in special and consequential damages to Distributor including, but not limited to, loss of profits which Distributor would otherwise be able to earn except for failure of Isotron Corporation to fully comply with all of the terms and provisions of this agreement.

"3. The amount which Isotron Corporation shall receive from Distributor for the purchase of such machines is the net amount of $119.00 for the Isotron machine. It is understood and agreed that Isotron Corporation will promptly ship such machines from Dallas, Texas, to the place directed by Distributor upon receiving shipping instructions from Distributor and all risk of loss or damage in transit shall be upon Isotron Corporation unless otherwise agreed upon in writing by both parties.

"4. Isotron Corporation shall indemnify and hold Distributor harmless against and from any and all liability, claims and cause of action, including investigation and attorneys' fees, growing out of, connected with, or related to the demonstration or use of machines.

## "DISTRIBUTOR'S OBLIGATIONS

"1. Distributor shall make use of reasonable efforts to create and maintain a system of sales distribution for machines

in the territory covered by this agreement.

"2. Distributor shall pay Isotron Corporation the agreed purchase price set forth above for each machine sold in the territory covered by this agreement.

"3. Distributor agrees that he, his employees, agents, associates, etc., will in no way misrepresent Isotron Corporation's products, and that he will advertise, promote, sell and otherwise conduct his distributorship in a manner prescribed by Isotron Corporation, and Distributor also agrees that he will submit any changes he plans to make in Isotron Corporation's prescribed methods of advertising or otherwise conducting a distributorship, to Isotron Corporation for approval prior to his making the aforementioned changes.

"MUTUAL AGREEMENTS

"1. Each party hereto shall be an independent contractor and neither party shall be regarded as an agent, employee or servant of the other party.

"2. Distributor shall be permitted to form a corporation to be incorporated under the laws of the state of Texas and to assign this distributorship agreement to said corporation, whereupon Distributor shall be relieved of all personal liability under the terms of this agreement.

"3. If this agreement is enforced by suit, the prevailing party shall be entitled to recover of the losing party a reasonable attorney's fee.

"4. In the event of a breach of this agreement or a threatened breach of this agreement by either party, the aggrieved party shall have the remedy of specific performance, damages or both, at the sole election of the aggrieved party.

"5. This agreement shall be regarded by both parties as performable in the City and County of Dallas, State of Texas.

"6. This agreement contains the entire agreement between the parties and all prior parol agreements, understandings and representations have been merged into this written agreement. This agreement may not be modified, altered or varied, except by a written instrument signed by both parties and bearing a date contemporaneous with or subsequent to the date of this agreement.

"IN WITNESS WHEREOF, we have hereunto set our hands this 28th day of March, 1966, at Dallas, Texas."

Mrs. Albin filed a suit June 3, 1966, in a district court of Dallas County, naming Isotron Corporation, W. E. Causey, Lee Causey and John McDonald as defendants. The original petition alleged Isotron Corporation was the alter ego of W. E. Causey and Lee Causey, and that such parties, together with John McDonald, acted in concert to bring about a breach of Mrs. Albin's contract with Isotron Corporation by notice to all dealers in the State of Texas to order Isotron machines "directly from defendants and further to refrain from honoring the exclusive distributorship" agreed to in the instrument quoted above and in "accomplishing the objective of which your plaintiff complains herein". The petition also alleged that at all times pertinent to her lawsuit she acted as agent of each and all of the named defendants in the performance of her obligations under the contract.

By supplemental petition Mrs. Albin alleged (Paragraph II) that she: "was the agent of defendants herein and performed all of her duties under the direct control and supervision of the defendants. Plaintiff would further show that that part of said contract wherein it was stated that plaintiff and defendant are *independent contractors* is void as a matter of law as the same violates the public policy of this state * * *. That at no time was plaintiff engaged in the business of buying or

selling the Isotron machines or related machines". Then pleading in the alternative (Paragraph III) she alleges she made a new and subsequent agreement with W. E. Causey, Lee Causey and John McDonald, "whereby plaintiff was to perform all of the acts delegated to her by defendants"; the pleading continued with an allegation of work performed at the direction of the Causeys and McDonald. The supplemental pleading contained a further alternative (Paragraph IV) alleging, to quote, that she: "* * * was induced to enter into said agreement by the false representation of Defendants herein, to-wit: that said contract was in all respects legal and binding on all parties; that said representations were made by defendants with intent to deceive and defraud plaintiff; that said representations were known to be false by the defendants, and that plaintiff believed and relied upon said representations and was induced to enter into said contract thereby. By reason of the foregoing Plaintiff has been damaged in the sum pleaded herein".

Paragraph numbered 1 under the heading *Isotron Corporation's Obligations* in the contract between Mrs. Albin and that corporation dated March 28, 1966, appoints Mrs. Albin the exclusive distributor of Isotron machines for the entire state of Texas, except Dallas County. Distribution and sale of the machines in the territory specified is by this paragraph restricted to and made the exclusive prerogative of Mrs. Albin. Such term binds the corporation not to distribute and sell or permit distribution and sale otherwise. Under the heading *Distributor's Obligations* the forepart of the paragraph numbered 3 appears to subordinate the distributor's freedom of action to such direction, rules and regulations as the corporation might make pertaining to advertising, promoting and selling the machines and in otherwise conducting the distributorship. No written manual or other evidence was offered to show the corporation prescribed methods of advertising, etc., or otherwise operating

a dealership. When this retention of authority in the corporation is read in context with the language of the entire paragraph, however, the obligation does not appear to bind the distributor to acquiesce in such guidance or direction from the corporation. The closing language of the paragraph appears to contemplate a submission of proposed advertising, etc., for approval before a change would be made. The distributor is only bound to submit changes but not necessarily to follow the corporation's directions thereon, thus implying that the distributor could make changes regardless of approval. Also, when the provisions of this paragraph are considered in context with the granting of an exclusive distributorship and the positive stipulation under the heading *Mutual Agreements,* that each party to the agreement is an independent contractor and not an agent, servant or employee of the other. it becomes clear that the language of paragraph 3 of the *Distributor's Obligations* was not intended to give the corporation such control of the conduct of the distributorship as to change the relationship of the parties from that expressly stated to one wherein Mrs. Albin was the agent or employee of the corporation in advertising, promoting and selling the machine and in otherwise conducting a distributorship.

■ The agreement constitutes an illegal trust, as defined by Tex.Rev.Civ.Stat.Ann. art. 7426 (1960), and is a conspiracy in restraint of trade as defined in Tex.Rev.Civ. Stat.Ann. art. 7428 (1960). Tex.Rev.Civ. Stat.Ann. art. 7437 (1960) declares such agreements to be void and unenforceable. Climatic Air Distributors of South Texas v. Climatic Air Sales, Inc., 162 Tex. 237, 345 S.W.2d 702 (1961); Jackson Brewing Company v. Jack D. Clarke, Jr., 375 S.W.2d 352 (Tex.Civ.App. Beaumont, 1964, writ ref'd, n. r. e.); Grand Prize Distributing Co. of San Antonio, Inc., v. Gulf Brewing Company, 267 S.W.2d 906 (Tex.Civ. App. San Antonio 1954, writ ref'd); Ford Motor Co. v. State, 142 Tex. 5, 175 S.W.2d 230 (1943).

Mrs. Albin's original petition founded her cause of action squarely upon a breach of the contract of March 28, 1966. Leaving the alternative fraud count out of consideration for the moment, the theory of recovery underlying her supplemental pleading is less apparent but the theory appears to be that regardless of the terms of the agreement her status in the actual execution of the contract was that of an agent or an employee, or in the alternative, that by the terms of a subsequent agreement she was an agent in the performance of certain described activities. Whether the work or activity associated with this subsequent agreement was in the furtherance of the March, 1966, contract or independent of it is not specifically stated; however, such allegations appearing in a supplemental petition, and not stating a cause of action on or the terms of a subsequent agreement, to have meaning the allegations must be construed to refer to the contract of April 28, 1966. The earlier statement of the pleadings herein discloses that Mrs. Albin did not plead for recision or reformation of the contract of March 28, 1966. Her effort in the lawsuit appears to be to enforce the contract wholly or partially or to somehow be recompensed in damages because of its existence or terms. It seems a fair appraisal to say, without more tedious pursuit of the possible inferences of the pleadings, that her pleadings as a whole state no cause of action against any of the defendants that is not made to depend wholly or in part upon the contract of March 28, 1966. Excepting the fraud allegation, Mrs. Albin's supplemental pleadings add up to nothing more than a construction she places on the exclusive distributorship contract.

■ Without rescinding or reforming the void contract of March 28, 1966, Mrs. Albin undertakes to enforce it by pleading and proof showing she allowed herself to be directed in the contract's execution as though she were an agent of Isotron Corporation rather than an independent distributor as the written contract stated.

The contract is not ambiguous, so evidence of an interpretation or construction that Mrs. Albin was an agent in carrying out the contract's purpose is not admissible to vary its clear provisions. Climatic Air Distributors of South Texas v. Climatic Air Sales, supra; see also Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d 343 (Texas 1954), and Southern Health Ass'n v. Harris Memorial Methodist Hospital, 180 S.W.2d 169 (Tex.Civ.App. Fort Worth 1944, ref., w. m.).

■ The fraud allegations of Mrs. Albin's supplemental pleadings do not state a cause of action cognizable in a court of law. Mrs. Albin elected by her pleadings to affirm a void, unenforceable contract and recover damages. With respect to election of remedies it is said in Tex.Jur. 2d Fraud and Deceit, § 81 that:

"The doctrine of election of remedies limits a defrauded party to the remedy of his election, if available remedies are inconsistent. It is readily apparent that an action for damages is ordinarily based on the continued existence of the transaction whereas an action for recission is based on its abrogation. A party who is injured by fraud may elect to accept the situation and recover his damages, or he may repudiate the transaction and seek restoration of the status quo through an action to rescind, but he cannot do both * * *"

The law applicable to her effort to assert rights under the void contract is succinctly stated in 38 Tex.Jur.2d Monopolies, Combinations, etc., § 19 in this language, to-wit:

"Under an express provision of the statute, any contract or agreement in violation of any provision of the antitrust laws is absolutely void and not enforceable either in law or equity. The effect of the illegality is that the law leaves the parties just where they have placed

themselves and permits neither to assert rights arising under the contract."

See also 13 Tex.Jur.2d Contracts § 202.

All of appellant's points of error have been carefully examined and no error found that requires a reversal of the trial court's judgment. Accordingly affirmance is ordered.