**GRAPHILTER CORPORATION, Appellant,**

**v.**

**Joan W. VINSON, Appellee.**

**No. 18394.**

Court of Civil Appeals of Texas, Dallas.

Jan. 16, 1975.

Rehearing Denied Feb. 13, 1975.

Stewart J. Alexander, San Antonio, for appellant.

R. W. (Bill) Glenn, Plano, for appellee.

GUITTARD, Justice.

Graphilter Corporation sued Joan W. Vinson for payments due for certain quan-

tities of graphite rock particles. Plaintiff alleged that these materials were sold to defendant or to her designated representatives on defendant's authorization. Defendant Vinson answered that she was not a party to the transactions in question and that she received no benefit from them. She also pleaded that the original contract between the parties was illegal because it was in restraint of trade. On trial to a jury, all special issues were answered in plaintiff's favor, but the trial court rendered judgment for defendant notwithstanding the verdict. We affirm the judgment on the ground that the transaction was illegal.

We take the evidence in the light most favorable to plaintiff. Graphilter Corporation was in the business of mining, processing, and selling graphite rock particles for use in filtration systems. This material was sold in various grades according to the size of the particles. The smallest particles, known as "fines," had little commercial value. By a written "Mineral Sales Contract" dated March 4, 1970, Graphilter agreed to sell to defendant Joan Vinson and her former husband Jack Vinson, who were described as "partners," one hundred thousand tons of "fines" at a price of two dollars per ton, and an additional consideration of a five-per-cent royalty on all income from subsequent dealings in the materials by the partners. This material was sold in its existing condition and location without further expense to Graphilter for packing and shipping, and the agreed purchase price was payable on removal of each shipment from Graphilter's stockpile at Llano, Texas.

Defendant's claim of illegality arises from the following provision of the contract:

As a further consideration to Graphilter, Partners agree not to enter into the business of manufacturing or selling graphite ore as a filter media.

After this contract was signed, Mrs. Vinson made various contractual arrange-

ments concerning disposition of the material to other persons. The first of these transactions involved Frank Marshall and Associates. According to the testimony of Graphilter's president, James Rindfuss, Mrs. Vinson telephoned him and requested Graphilter to sack a certain quantity of the material and load it on railroad cars consigned to Marshall at Waco, Texas. Rindfuss agreed, provided that Mrs. Vinson would be responsible for the charges. Since the original contract did not provide for sacking, loading, and shipping, Graphilter made a charge of thirty dollars per ton, which included the two dollars specified in the original contract. Rindfuss testified that Mrs. Vinson agreed to be responsible for these charges, and, although she denied any such agreement, the jury apparently accepted Rindfuss's testimony on this point. Other similar transactions followed, in which various charges were made, according to the services performed by Graphilter. After both Mrs. Vinson and her designees failed to pay these charges, Graphilter filed this suit for charges totaling $16,608.70. Among other defenses, Mrs. Vinson pleaded that the written contract of March 4, 1970, was "an illegal contract which attempts to restrict competition."

Defendant's plea of illegality was urged in the trial court in an oral "motion for judgment on the pleadings" presented before the selection of a jury, in which she urged that the contract was void as a matter of law in that it was in restraint of trade because of the restrictive language above quoted. This motion was overruled. After a verdict favorable to plaintiff, defendant filed a motion, on other grounds, for judgment notwithstanding the verdict, which the trial court sustained. On this appeal by plaintiff, defendant contends in one of her "cross points" that the trial court erred in not holding that the contract was void as a matter of law because it was in restraint of trade. We agree with this contention, and, since such illegality requires a judgment for defendant, we need not discuss any of the other contentions in the briefs.

The agreement by the Vinsons in the mineral sales contract "not to enter into the business of manufacturing or selling graphite ore as a filter media" restricts them from engaging in a lawful business. Consequently, it is illegal under the Texas Antitrust Act, Tex.Bus. & Comm.Code Ann. §§ 15.02, 15.04 (Vernon 1968).[1] It is also void under the common-law rule against contracts in restraint of trade. Wissman v. Boucher, 150 Tex. 326, 240 S.W.2d 278, 280 (1951); Restatement of Contracts §§ 513, 514, 515 (1932). No question arises here as to whether the restraint is reasonable, since it is not ancillary to a contract of employment or to a contract for sale of the goodwill of a business, and even if it were considered ancillary to a legitimate contract, it is not limited to a reasonable time and territory. Cf. Justin Belt Co. v. Yost, 502 S.W.2d 681, 684 (Tex.1973). It is simply an agreement by the buyers of personal property not to compete with the seller. Such a contract is an illegal restraint of trade, and no recovery on it is permitted. See Vann v. Toby, 260 S.W.2d 114, 118 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.); Cunningham v. Frito Co., 198 S.W.2d 772, 774 (Tex.Civ.App.—San Antonio 1946, no writ); and cf. Climatic Air Distributors v. Climatic Air Sales, Inc., 162 Tex. 237, 345 S.W.2d 702, 704 (1961).

Since the mineral sales contract is illegal for the reasons stated, the question presented is whether such illegality

---

1. Section 15.02(b) defines a "trust" as "a combination of capital, skill, or acts by two or more persons to

"(1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market or transportation, or the free pursuit of a lawful business; or

. . . . .

"(7) refrain from engaging in business, or from buying or selling tangible personal property, partially or entirely in this state."

Section 15.04 declares such a "trust" illegal, void, and unenforceable.

bars recovery for sales made on different terms after the original contract was signed. The test of whether a demand connected with an illegal transaction may be enforced at law is whether or not a case may be established without reliance on the illegal transaction. Pioneer Mutual Compensation Co. v. Diaz, 142 Tex. 184, 177 S.W.2d 202, 203 (1944). Apparently, Graphilter takes the position that its present demand is not based on the written contract, but solely on sales of material to defendant Vinson or to persons designated by her, as established by the testimony of Rindfuss and by invoices admitted in evidence by the trial court. This position is unsound because the subsequent transactions are based on the original contract. Graphilter does not and cannot rely solely on the invoices because they show delivery of materials to persons other than Mrs. Vinson. In order to establish its case against her, Graphilter proved the original contract and also presented the testimony of Rindfuss to the effect that the materials were already subject to the mineral sales contract with her, and that he made subsequent arrangements with her, consistent with that contract, for performance of additional services, such as sacking, loading, and shipping, for which she agreed to pay additional compensation. Rindfuss testified that the charges which Mrs. Vinson agreed to pay in the subsequent transaction included the two dollars per ton specified in the original contract. Graphilter's letters demanding payment of the amounts now sued for were expressly based on the written contract, and, in one instance, after Mrs. Vinson had obtained shares of stock as a result of dealings with the material in question, Graphilter demanded the five-per-cent royalty provided in the original contract. Finally, Graphilter gave notice of termination of the original contract because the amounts now sued for were not paid.

Thus Graphilter's own evidence shows that it regarded the subsequent transactions as based on the original contract. Consequently, the case comes within the rule that where subsequent transactions are based on a master contract, the question of their validity is controlled by the master contract. Kelly v. Bryson Pipeline & Refining Co., 163 S.W.2d 413, 414 (Tex.Civ. App.—Fort Worth 1942, no writ); and cf. Henderson Tire & Rubber Co. v. Roberts, 12 S.W.2d 154, 157 (Tex.Comm'n App. 1929, jdgmt adopted).

■ The taint of illegality cannot be avoided by relying on the additional charges for sacking, loading, and shipping as new and different consideration. The illegal restriction is expressly recited to be part of the consideration for the original contract, and, in view of the evidence above recited, must also be taken as part of the consideration for the subsequent transactions. If the restriction had been valid, it would have applied to all the transactions in question. In such a situation the consideration cannot be apportioned or separated, and the entire transaction is void. Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d 343, 348–349 (1954).

■ Although the illegality of the contract was not included in defendant's motion for judgment notwithstanding the verdict, she is authorized by Texas Rules of Civil Procedure, rule 324 to bring forward by cross points "any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict." We need not remand the case to the trial court for further proceedings, since the illegality appears from this record as a matter of law. If judgment had been entered for Graphilter in harmony with the verdict, we would be required to reverse and render judgment for defendant Mrs. Vinson. Therefore, the judgment denying any recovery against her must be affirmed.

Affirmed.