**RED WING SHOE COMPANY, INC., Appellant,**

v.

**SHEARER'S, INC., Appellee.**

No. 01–88–00943–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 6, 1989.

Arnold Anderson Vickery, E. Landers Vickery, Vickery & Kilbride, Annette T. Kolodzie, Michael R. Waller, Sheinfeld, Maley & Kay, Houston, for appellant.

Johnny J. Williams Jr., Charles A. Botschen, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and O'CONNOR, JJ.

## OPINION

EVANS, Chief Justice.

Red Wing Shoe Company, Inc. appeals from a permanent injunction requiring that it resume the sale of its shoe products to Shearer's, Inc. The case was submitted to the trial court on stipulated facts. *See* Tex.R.Civ.P. 263.

Two questions are presented in this appeal: (1) Does the federal "rule of reason" standard apply in determining the legality of restraints of trade or commerce under the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code Ann. secs. 15.01–15.26 (Vernon Supp.1988); and (2) Does the above-mentioned antitrust Act prohibit Red Wing, a manufacturer, from unilaterally discontinuing its sales relationship with a customer, Shearer's, who refused to respect the manufacturer's territorial distribution restrictions?

The trial court concluded that the 1983 Act did not adopt the federal "rule of reason" analysis for vertical non-price restraints, and did not overrule Texas case law prohibiting such restraints as illegal *per se.* The court also concluded that the 1983 Act prohibited Red Wing from unilaterally ending its sales relationship with Shearer's.

We are of the opinion that the trial court's rulings are erroneous, and we reverse the trial court's judgment and order the permanent injunction dissolved.

Red Wing manufactures boots and shoes. Shearer's is an independent retailer that sells boots and shoes at 20 locations

throughout Texas. Shearer's sells several brands of boots and shoes in addition to the Red Wing brand, but it has carried Red Wing products since its first store opened in 1956. Because Shearer's carries several brands of shoes, including Red Wing's, it is a "branded account" within the nomenclature of the trade. Sales to branded accounts are final, and title to the merchandise passes to the retailer at the time of the wholesaler's sale.

During the early 1970's, Red Wing established a new policy of opening official Red Wing shoe stores in Texas. Some of these stores were company-owned, and others were dealer-owned. Some of these new Red Wing shoe stores competed with Shearer's and other shoe retailers. Under Red Wing's marketing strategy, it established a policy of authorizing specific store locations to sell Red Wing merchandise. Under this policy, Red Wing would not usually authorize a second retail outlet within a certain protected area around one of its existing stores.

A number of Shearer's stores were never approved as authorized "branded accounts." Nevertheless, Shearer's transferred Red Wing products from its authorized stores to sell merchandise at certain Shearer's stores that were not authorized. All of Shearer's unauthorized stores are located in geographical areas where an official Red Wing shoe store or an authorized branded account already exists, or where Red Wing salesmen had been making other arrangements to cover the market.

In 1986, Red Wing asked Shearer's to remove Red Wing products from unauthorized store locations. Red Wing notified Shearer's that, unless it removed all Red Wing products that had been transferred from authorized to unauthorized store locations, Red Wing would stop doing business with Shearer's.

Shearer's refused to comply. In September 1987, because of Shearer's continued refusal to comply with Red Wing's policies, Red Wing unilaterally ended its business relationship with Shearer's. Shearer's then filed this suit, alleging that Red Wing's conduct violated the Texas Free Enterprise and Antitrust Act of 1983.

After hearing the stipulated facts, the trial court granted a permanent injunction requiring Red Wing to resume sales of its products to Shearer's. The trial court concluded that: (1) the Texas Free Enterprise and Antitrust Act of 1983 did not adopt the federal "rule of reason" analysis for vertical non-price restraints and did not overrule prior Texas case law prohibiting such restraints as illegal *per se;* and (2) the Texas antitrust laws prohibit a manufacturer from unilaterally refusing to deal with a customer who refuses to respect a manufacturer's territorial distribution restrictions.

In its first point of error, Red Wing argues that the trial court erred in holding that the 1983 Act did not require analysis of vertical non-price restraints under the same "rule of reason" that federal courts apply.

 Contracts, combinations, and conspiracies in restraint of trade are of two types, horizontal or vertical. *Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292, 295 (5th Cir.1981). Horizontal combinations are cartels or agreements among competitors that restrain competition among enterprises at the same level of distribution. These are ordinarily illegal *per se. Catalano, Inc. v. Target, Inc.,* 446 U.S. 643, 647, 100 S.Ct. 1925, 1927, 64 L.Ed. 2d 580 (1980).

 Vertical restraints are those imposed by persons or firms further up the chain of distribution of a specific product than the enterprise restrained. *Muenster Butane,* 651 F.2d at 295. The classic vertical restraint case is one in which a distributor imposes certain restrictions on its dealer, as in this case, where Red Wing imposed territorial restrictions on Shearer's.

Red Wing's restrictions may also appear to be horizontal, because Red Wing and Shearer's both compete to sell Red Wing products. However, the Supreme Court has addressed this situation and held that conspiracies between a manufacturer and its distributors are only treated as horizon-

tal when the source of the conspiracy is a combination of the distributors. *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 372–73, 87 S.Ct. 1856, 1862, 18 L.Ed.2d 1249 (1967). Here, if there was a plan to eliminate Shearer's by imposing territorial restrictions on the sale of Red Wing shoes, that plan originated with the manufacturer, which established company stores for that purpose. Consequently, antitrust law treats the conspiracy as a vertical restraint. *H & B Equip. Co. v. International Harvester*, 577 F.2d 239, 245–46 (5th Cir.1978).

■ The "rule of reason" is a standard of analysis applied to determine the legality of restraints of trade or commerce. Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition. *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). One of the most frequently cited statements of the rule of reason appears in *Chicago Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918), where the Court wrote:

> The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge or intent may help the court to interpret facts and to predict consequences.

■ *Per se* rules of illegality are considered appropriate only when they relate to conduct that is manifestly anticompeti-

tive. *GTE*, 433 U.S. at 50, 97 S.Ct. at 2557. As the Supreme Court explained in *Northern Pac. Ry. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958), "There are certain agreements or practices which, because of their pernicious effect on competition and lack of any redeeming virtue, are conclusively presumed to be unreasonable and therefore illegal, without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."

■ Red Wing contends that the 1983 amendment to the Texas antitrust laws overruled former law holding vertical nonprice restrictions illegal *per se*. This issue is determinative of the case, for the parties have stipulated that if the federal rule of reason analysis applies, instead of a standard of *per se* illegality, Shearer's is not entitled to injunctive relief.

Because this case involves statutory construction, a brief comparison of the former statute with the amended statute is in order. Before 1983, the Texas antitrust statute prohibited monopoly, trust, and conspiracy in restraint of trade, and further, contained a restrictive "laundry list" of prohibited conduct. *See* Texas Free Enterprise and Antitrust Act of 1983, ch. 519, 1983 Tex.Gen.Laws 3010 *repealed by* Tex.Bus. & Com.Code Ann. sec. 15.01–15.26 (Vernon Supp.1988).

Former section 15.03(a)(1) provided: "It is a conspiracy in restraint of trade for two or more persons engaged in buying or selling tangible personal property to agree not to buy from or sell to another person tangible personal property." Texas courts construed this statute to prohibit vertical nonprice distribution restraints as *per se* violations of the state's antitrust laws. *See Climatic Air Distrib. v. Climatic Air Sales, Inc.*, 162 Tex. 237, 241, 345 S.W.2d 702, 703–704 (1961).

The enactment of the 1983 Act constituted the first substantial change in Texas antitrust law since 1889. Besides being outdated, Texas antitrust law was inconsistent with developments in federal antitrust law. The 1983 Act was designed to correct this inconsistency by bringing uni-

formity to state and federal interpretations of the antitrust laws.

Former section 15.04, upon which the earlier Texas case law of non-price vertical restraints relied, was replaced by section 15.05. This new section adopted the language of the federal Sherman Antitrust Act, and reads in part:

Sec. 15.05. Unlawful Practices

(a) Every contract, combination, or conspiracy in restraint of trade of commerce is unlawful.

Other sections of the 1983 Act are also taken directly from the federal law. Moreover, the Texas Legislature not only used language tracking that of the federal antitrust statute in the substantive portions of the 1983 Act, but it also included a clause specifying uniformity of construction between the federal and Texas statutes. Former section 15.04, repealed by the 1983 Act, was rewritten and now states:

Sec. 15.04. Purpose and Construction

The purpose of this Act is to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the state. The provisions of this Act shall be construed to accomplish this purpose and shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose.

The express words of the 1983 Act, as well as its legislative history, support the conclusion that the Texas legislature was taking a deliberate step toward uniformity with federal antitrust law.

Federal law in this area is well settled. In the *GTE* case, 433 U.S. at 59, 97 S.Ct. at 2562, the United States Supreme Court overruled *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), which held vertical non-price restraints illegal *per se*. In *GTE*, the plaintiff retailer contended that it was not obligated to return secured merchandise to the manufacturer following termination of its franchise. According to the plaintiff, the original franchise agreement, which provided that each franchisee could sell the manufacturer's product only from the location at which the retailer was franchised, violated section one of the Sherman Antitrust Act, and therefore was unenforceable.

The United States Supreme Court rejected the premise that every territorial distribution restriction was illegal *per se*. Instead, the Supreme Court held that each restriction should be analyzed on its facts to determine whether it restricted competition or, alternatively, promoted competition. *GTE*, 433 U.S. at 58–59, 97 S.Ct. at 2561–2562.

Critical to the Supreme Court's analysis is the difference between *inter-* and *intra-*brand competition. *Inter* brand competition is competition among different manufacturers, as among Red Wing and other shoe makers. *Intra* brand competition is competition among retailers to sell the same manufacturer's product, as among Shearer's and other Red Wing distributors. *GTE*, 433 U.S. at 51 n. 19, 97 S.Ct. at 2558 n. 19. The Supreme Court reasoned that a manufacturer's territorial distribution restrictions may have a negative effect on intrabrand competition, but this effect may be offset by competition in the marketplace from competing brands of the same product. Thus, if the interbrand market is competitive, intrabrand restraints, such as territorial sales restrictions, do not necessarily restrict competition. The Supreme Court reasoned that when there is competition from other brands, in that case among other television manufacturers, "it provides a significant check on the exploitation of intrabrand market power because of the ability of consumers to substitute a different brand of the same product." *GTE*, 433 U.S. at 51, 97 S.Ct. at 2558.

The Supreme Court recently reaffirmed its application of the rule of reason to vertical non-price restraints in *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).

While there has been little treatment of the 1983 Act by Texas courts, federal

courts sitting in Texas have interpreted the 1983 Act to require application of the federal rule of reason to vertical non-price restrictions. In *Henderson Broadcasting Corp. v. Houston Sports Ass'n.*, 647 F.Supp. 292, 298 (S.D.Tex.1986), the court noted that the relevant sections of the 1983 Act mirror the language of sections one and two of the Sherman Antitrust Act. The court concluded, "The Texas legislature expressly intended that the Texas antitrust sections be construed in harmony with federal judicial interpretations.... As a result, the analysis under Sections One and Two of the Sherman Act applies equally to the Plaintiff's state antitrust claims."

Shearer's concedes that the 1983 Act was intended by the legislature to update the Texas antitrust laws and harmonize them with federal laws. However, Shearer's disputes that application of the rule of reason analysis to vertical restraints imposed by a manufacturer upon one of its distributors is consistent with the stated purpose of the Texas act. According to Shearer's, the primary concern of federal antitrust laws is maintaining interbrand competition. Shearer's argues that the purpose of the Texas 1983 Act is not only to maintain economic competition, but also to provide the benefit of that competition to consumers. Thus, Shearer's argues, if consumers would be hurt by having to buy Red Wing shoes from a single location at a higher price, then Red Wing's attempt to restrict sales to designated locations would be *per se* unreasonable, even under federal law.

Shearer's argument fails to take into account the effect of interbrand competition, a necessary inquiry under the Supreme Court's holding in *GTE.* As the Court noted, a competitive market in other brands of shoes forces a manufacturer of the same product to remain competitive in order to retain customer sales. Thus, a manufacturer's decision to adopt a more efficient marketing strategy for the sale of its goods does not necessarily imply harm to the consumer. Further, without proof of such "pernicious harm," the restraints do not fall into the same rigid category of conduct that is illegal *per se,* such as price restraints on products.

Shearer's nevertheless argues that the goals of the 1983 Act can best be accomplished by having a rebuttable presumption that conduct which was previously a *per se* violation under the former statute remains unreasonable *per se.* Shearer's has cited no authority to support its argument, and indeed, existing case law is to the contrary.

The legislative history, the specific language, and the express provision in the 1983 Act, all evidence the legislature's intent to bring the Texas antitrust laws into harmony with federal rules. Section 15.04 of the Act provides in part:

The provisions of this Act shall be construed to accomplish this purpose and *shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes* to the extent consistent with this purpose. (Emphasis added.)

The federal law is well-settled: vertical non-price restraints are no longer illegal *per se,* but are to be analyzed under the rule of reason. Red Wing's conduct in this case, therefore, must be examined under the rule of reason applied by the federal law and adopted by the Texas 1983 Act. Because the parties have stipulated that Shearer's is not entitled to injunctive relief if the rule of reason is applied to the facts of this case, it is unnecessary to make this examination.

The appellant's first point of error is sustained.

In its second point of error, Red Wing argues that, in the alternative, the trial court erred in holding that a manufacturer does not have the right unilaterally to end a sales relationship with a customer.

■ Shearer's alleges that Red Wing violated section 15.05(a) of the 1983 Act because its conduct "constitutes an unlawful contract, combination or conspiracy, in restraint of trade or commerce." Under section 15.05(a), there must be concerted action by *two or more* persons. Thus, Shearer's faces the threshold requirement of identifying a co-conspirator. Here, it is

undisputed that Red Wing's refusal to deal with Shearer's was unilateral. Shearer's has not claimed that Red Wing acted in concert with anyone else in deciding to discontinue selling its shoes to Shearer's, a fact that distinguishes this case from *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), cited by appellant. Further, Shearer's cannot claim collusion between Red Wing manufacturers and distributors of its product because a company cannot conspire with its own employees as a matter of law. *H & B Equip. Co.*, 577 F.2d at 244. This eliminates the possibility that a company store or its manager might be a co-conspirator. *Id.*

■ The decision to terminate the business relationship with Shearer's was made by Red Wing alone. Here, there was no contract between the two, only an open account that was subject to termination at will.

Texas courts have long recognized the right of a manufacturer unilaterally to discontinue a sales relationship with a customer. In *Ford Motor Co. v. State*, 142 Tex. 5, 11, 175 S.W.2d 230, 234 (1943), the Texas Supreme Court held:

> There is nothing in [Texas antitrust] laws that requires a manufacturer to sell its manufactured product to any dealer or purchaser who wishes to buy same. To the contrary, such manufacturer may sell, or refuse to sell, at its pleasure.

The court reiterated its decision in *Sherrard v. After Hours, Inc.*, 464 S.W.2d 87, 89 (Tex.1971), stating, "A manufacturer may sell his product to whomever he pleases, and he may choose to place only one or two or three distributors in any particular city."

Red Wing's decision to stop selling to Shearer's was made unilaterally and independently, in furtherance of its marketing policies. Its decision to discontinue its open-account sales relationship with Shearer's did not violate the 1983 Act.

Appellant's second point of error is sustained.

We reverse the trial court's judgment granting Shearer's permanent injunction and order the permanent injunction dissolved.