**E. F. I., INC., Appellant,**

**v.**

**MARKETERS INTERNATIONAL, INC.,
et al., Appellees.**

**No. 16032.**

Court of Civil Appeals of Texas,
Houston (First Dist.).

March 1, 1973.

Rehearing Denied April 5, 1973.

J. Leonard Gotsdiner, Ranseler O. Wyatt, of Houston, for appellant.

Garrett & Letbetter, George Payne, Jr., Houston, for appellees; John C. LaFave, Houston, for appellee Vic Womack.

PEDEN, Justice.

Appeal from the granting of a summary judgment for the defendants in a suit alleging that Marketers breached the contract between the parties 1) by failing to pay for $37,000 worth of electronic equipment delivered to Marketers by E. F. I. and sold by Marketers and 2) by failing to carry out its contractual obligations as distributor of E. F. I.'s products, to E. F. I.'s damage in the amount of $500,000. E. F. I. also sued defendants Levit and Womack on their written guaranty of payment of the account.

Marketers' answer alleged that the contract violated the Texas antitrust statutes so it is void and unenforceable, and the trial court's judgment recited that the court was of the opinion that the plaintiff's cause of action as to all defendants was based upon and arises from a contract which is invalid and unenforceable as a matter of law.

E. F. I. is a Miami, Florida corporation and Marketers is a Houston corporation.

Their agreements are evidenced by several written instruments, the second of which was labelled "Exclusive Dealer Agreement." It was dated December 7, 1969 and included these provisions:

"EFI does by this Agreement hereby appoint and does hereby designate Marketers to be the exclusive dealer and representative for the promotion, sale and distribution, in the territories as set forth and described in Appendix A.

.  .  .

"  .  .  .  .

"3. EFI agrees to sell all units to Marketers in accordance with the prices set forth in Appendix C. . ."

"  .  .  .  .

"12. Cancellation of orders by Marketers' customers shall not constitute cancellation of any Marketers' orders to EFI . . ."

"  .  .  .  .

"15. Marketers agrees that it shall act as an independent contractor operat-

ing under this Agreement and no partnership with EFI is intended or implied."

" . . . .

"20. This Agreement supersedes and replaces any and all previous agreements . . . ."

The third written agreement was an "Exclusive Distributor Agreement" between E F I and Marketers dated August 4, 1970. If Marketers maintained a certain level of sales, this contract designated Marketers to promote the sale of certain E F I products and to be E F I's exclusive distributor in the United States except 'for four named counties in Illinois and except for a specific contract with Ford Motor Co., but Marketers did not agree to handle only the products of E F I. The parties' contract provided for the sale of E F I's products; it did not constitute an agency agreement. All orders were to be filled by E F I at Miami, Florida. Item 8 stated:

"It is the intention of the parties to this agreement that Marketers shall at all times remain an independent contractor and shall do nothing to attempt in fact or create in the eyes of the public a partnership, principal-agent relationship or employer-employee relationship with EFI . . . ."

Another instrument that is a part of the summary judgment evidence is the guaranty agreement executed by George Levit and W. V. Womack on March 21, 1969 stating ". . . we jointly and severally agree and guarantee to be responsible" for payment to E F I of any balance due from Marketers for purchases not to exceed $100,000 until you receive written notice from us to the contrary.

In his deposition President George A. Harris of E F I stated that 1) there was nothing ambiguous about these instruments, 2) Marketers was the only distributor that ever had an exclusive distributorship in Texas, 3) all transactions were treated as sales and 4) all sales were final.

In appealing from the trial court's granting of the defendants' motion for summary judgment, E F I asserts eight points of error. Its third and fifth points of error assert that the trial court erred in granting summary judgment since Texas antitrust laws are not applicable because a) either the parties' transactions were in interstate commerce or b) any intrastate nature of the parties' business was merely incidental to the interstate nature of it and would be governed by laws regulating interstate commerce rather then the Texas antitrust statutes. Appellant's fourth point of error asserts that issues of material fact were raised. We sustain these points.

■ In an affidavit filed by E F I as part of its supplemental motion for summary judgment it was stated that ". . . all equipment and goods sold by the plaintiff to the defendants, were shipped from the State of Florida to Texas and the defendants, in turn, sold such equipment and items throughout the entire United States, except in a restricted area . . . ." This allegation is not disproved.

■ In our case the defendant had the burden of establishing by the summary judgment record that it was entitled to a judgment as a matter of law. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.1970). We hold that the defendant failed to sustain this burden.

■ It is to be presumed that the Legislature of Texas intended to exercise its authority to make laws within the scope of its power under the Constitution of this state and of the United States, and that it was not the purpose of that body to exceed its authority. Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S.W. 791 (1909).

The Texas Supreme Court has held in several cases that a contract between a foreign supplier and a Texas distributor which provides that the distributor is to have the exclusive right to market the supplier's products (in a territory in Texas) is unenforceable under Texas antitrust laws.

Sherrard v. After Hours, Inc., 464 S.W.2d 87 (1971); Climatic Air Distributors of South Texas v. Climatic Air Sales, Inc., 162 Tex. 237, 345 S.W.2d 702 (1961) and cases there cited. In none of those cases, however, did the exclusive territory extend beyond Texas' state lines.

■ The contract dated August 4, 1970 provided (except for two minor limitations) that Marketers would be the exclusive distributor for E F I products throughout the United States. Deposition testimony indicates that after the E F I products were delivered to Marketers a number were sold and delivered to Marketers' customers in other states. These transactions in interstate commerce were contemplated by the contract and were not subject to control by Texas antitrust statutes. Appellee has not established by the record that the contract was intrastate as to performance or that the transactions contemplated by and carried out under the contract were essentially intrastate. It appears that in performing under the contract a considerable number of Marketers' sales and deliveries of merchandise would directly and necessarily relate to interstate commerce. See W. T. Raleigh Co. v. Land, 115 Tex. 319, 279 S.W. 810 (Tex. Com.App.1926).

"Combinations which interfere with commerce wholly within a state are subject only to state jurisdiction. Combinations which interfere with interstate commerce are within federal control—and few businesses of significant size or importance are beyond the reach of the commerce clause and therefore outside the purview of the Sherman Act. But the federal antitrust laws do not pre-empt comparable state legislation. If a combination affects both interstate and intrastate commerce, federal control over the interstate part of the combination does not pre-empt state jurisdiction over the intrastate aspects of the combination." 54 Am.Jur.2d 925, Monopolies, Restraints of Trade, and Unfair Trade Practices, § 461.

The record does not show to what extent the commerce affected was intrastate and thus subject to Texas law.

■ If the activities in Texas of a foreign supplier were only occasional and isolated and if the contract in question was interstate as to execution and performance, it should be tested by the Federal Antitrust laws. The antitrust laws of the State of Texas do not apply. Denison Mattress Factory v. Spring-Air Co., 308 F.2d 403 (5th Cir. 1962).

We also sustain the appellant's seventh point of error:

"The court erred in granting appellees' motion for summary judgment because the appellees George Levit and W. Victor Womack, individually and jointly, guaranteed the payment of any balance due to the appellant and such guaranty was executed prior to any purported violation of the law by the appellant."

Marketers has not established that Texas antitrust laws shelter it from liability for payment for the products purchased; it follows that such antitrust laws have not been shown to void the agreement guaranteeing payment for those products.

Our disposition of these points requires us to reverse and remand this case, so we will briefly touch upon appellant's other points of error, each of which we overrule.

Their first point is that the trial court erred in granting the appellees' motion for summary judgment because the appellant never did control the prices for which the units in question were to be sold by the appellee to its customers; at most the appellant merely "suggested" the prices to the appellee and such would not be contrary to the Texas antitrust laws.

■ The Texas anti-trust statutes are found in Vernon's Texas Business & Com-

merce Code, V.T.C.A. That Code's § 15.02 contains these provisions:

"Trust Defined

(a) . . . .

(b) A 'trust' is a combination of capital, skill or acts by two or more persons to

(1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market . . . or the free pursuit of a lawful business; *or*

(2) fix, maintain, increase, or reduce the price of tangible personal property, the cost of insurance, . . ." (emphasis added).

§ 15.03 provides in part:

"Conspiracy in Restraint of Trade Defined

(a) It is a conspiracy in restraint of trade for

(1) two or more persons engaged in buying or selling tangible personal property to agree not to buy from or sell to another person tangible personal property."

§ 15.02 is written in the disjunctive, not the conjunctive, so a trust can exist even though the issue of price fixing is not present.

■ As we have noticed, a contract by which a distributor obtains an exclusive territory for the resale of articles purchased from the supplier, and by which the distributor is given a contractual right to prevent sales by the supplier to others in that territory, violates the antitrust laws of Texas and is unenforceable in the courts. Sherrard v. After Hours, Inc., supra. (The territory, was in Austin, Texas); Climatic Air Distributors of South Texas v. Climatic Air Sales, Inc., supra, held that a contract whereby the manufacturer appointed the distributor for a specified territory and agreed not to appoint others violated the Texas antitrust laws and was void. The territory in question was entirely in Texas.

Pram Laboratories, Inc., v. Pram Laboratories-South, 445 S.W.2d 533 (Tex.Civ. App.1969, no writ), was a suit by a manufacturer against a distributor and its president on a verified account. The court entered a summary judgment for the defendants. The manufacturer's attempt to restrict the right of the distributor in subsequent retail sales of merchandise brought the contract of distributorship and transactions under it within the application of the Texas anti-trust law. The court held that even though fact questions were raised as to price fixing, the court could not reverse judgment, because the contract violated the Texas anti-trust statutes in other particulars.

In Grand Prize Distributing Co. of San Antonio v. Gulf Brewing Co., 267 S.W.2d 906 (Tex.Civ.App.1954, writ ref'd), granting and accepting of the exclusive right to sell a manufacturer's product within a given territory (in Texas) is made a violation of the anti-trust statute.

The appellant's second point of error is:

"The court erred in granting the appellees' motion for summary judgment because the items involved were patented items, which authorized the appellant to fix prices if it desired to do so; also restrict the territory of sale, or make other provisions incident to the right to manufacture, use or sell."

■ The owner of a patent right, copyright, or trademark having the exclusive right to manufacture and sell the article protected thereby may impose upon his assignee such restrictions as he sees proper, such as the sale of the right to use a patent. However, in the case at bar the question involves the right to impose restrictions on articles protected by patent

which have already been sold and placed in commerce.

"The owner of an *article* protected by a patent, copyright, or trade-mark, when he has *manufactured* and *sold* the same, cannot impose restrictions upon his vendee as to the future sale of the same. [since] [h]aving parted with his ownership therein, it enters the channels of trade as an article of commerce and is thereafter beyond his control." Coca-Cola Co. et al. v. State, 225 S.W. 791 (Tex.Civ.App.—Beaumont 1920, no writ). (Emphasis added.)

Patrizi v. McAninch, 153 Tex. 389, 269 S.W.2d 343 (1954), was a suit for royalty payments on a patented machine. The seller had agreed not to sell or lease any like machine to anyone else in a certain territory in Texas for a period of years and the buyer had agreed for that period not to sell or lease the machine to anyone else without consent of the patentee. The Texas Supreme Court held that these provisions violated the Texas antitrust laws.

We find no merit in appellant's sixth point, which is that the "court erred in granting appellees' motion for summary judgment because the title to the units in question did not pass to appellee because it had not been paid for and therefore the appellant would have the right to impose restrictive conditions."

Appellant's president, George A. Harris, admitted in his deposition that all transactions were treated as sales on the date of shipment and that all sales were final, and the record does not support the appellant's contentions in this point. See Morris v. Case, 411 S.W.2d 783 (Tex.Civ.App.1967, writ ref., n.r.e.).

Appellant's last point of error is that Texas anti-trust laws do not apply because the parties were not in competition with each other. Texas Anti-trust statutes apply to contracts between suppliers and their distributors. See Sherrard v. After Hours, Inc., supra, and Climatic Air Distributors of South Texas v. Climatic Air Sales, Inc., supra.

Reversed and remanded.