M.I.I., also known as Marketers International, Inc., et al., Appellants,

v.

E.F.I., INC., Appellee.

No. 1552.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 20, 1977.

Rehearing Denied May 11, 1977.

George Payne, Tom R. Letbetter, Garrett & Letbetter, John C. LaFave, Houston, for appellants.

J. Leonard Gotsdiner, Ranseler O. Wyatt, Houston, for appellee.

CIRE, Justice.

This is an appeal from a judgment for plaintiff in a contract action, alleging the contract upon which plaintiff sued is unenforceable under the Texas antitrust laws. This is the second appeal in this case.

Appellee E.F.I., Inc. is a Florida corporation manufacturing electronic equipment on which it holds U.S. patents. On May 13, 1968 George A. Harris, president of E.F.I., wrote to W. V. Womack, Jr., outlining an exclusive dealership arrangement for the marketing of certain E.F.I. products. Womack replied, accepting the arrangement. Thereafter, to effectuate this agreement, appellant M.I.I., also known as Marketers International, Inc., was incorporated under Texas law, Womack and appellant George Levit each owning one-third of the corporate stock. On December 7, 1969 E.F.I. entered into an "Exclusive Dealer Agreement" with Marketers for the distribution of certain of its products. The contract provided in part:

> EFI does by this Agreement hereby appoint and does hereby designate Marketers to be the exclusive dealer and representative for the promotion, sale and distribution, in the territories as set forth and described in Appendix A, attached hereto and made a part hereof. The products covered by this Agreement are those listed in Appendix B, attached hereto.
>
> \* \* \* \* \* \*
>
> 3. EFI agrees to sell all units to Marketers in accordance with the prices set forth in Appendix C, attached hereto.
>
> \* \* \* \* \* \*
>
> 12. Cancellations of orders by Marketers' customers shall not constitute cancellation of any Marketers' orders to EFI.

Under an "Exclusive Distributor Agreement" dated August 4, 1970, Marketers was to become the sole distributor of certain E.F.I. products, subject to Marketers' purchase or orders tendered of designated quotas of units from E.F.I. It provided:

> 1. EFI does hereby authorize, appoint and designate Marketers to promote the sale of the products listed in Appendix "A" attached hereto and to be EFI's exclusive distributor in the United States, except for the Chicago, Illinois, area, as defined by DuPage, Lake, Cook and Will counties, for said products . . . .
>
> 2. EFI agrees to sell all the products shown on Appendix "A" to Marketers in accordance with the prices set forth on Appendix "B" attached hereto.
>
> \* \* \* \* \* \*
>
> 8. It is the intention of the parties to this agreement that Marketers shall at all times remain an independent contractor and shall do nothing to attempt in fact or create in the eyes of the public a partnership, principal-agent relationship, or employer-employee relationship with EFI.

Payment of Marketers' account due to E.F.I. was guaranteed unconditionally up to $100,000.00 by Levit and Womack, in an instrument executed March 21, 1969.

In December 1970 E.F.I. sued Marketers, Levit, and Womack for breach of the agreement. The defendants answered, alleging that the contracts violated the Texas antitrust laws and were thus invalid and unenforceable. The trial court granted a summary judgment for defendants based on their defense that the contracts were invalid. The Court of Civil Appeals for the First Supreme Judicial District reversed that

judgment and remanded the case for trial. 492 S.W.2d 302. The court, at 305, held that if E.F.I.'s activities in Texas were only occasional and isolated and the contract was interstate as to execution and performance, the federal antitrust laws should govern rather than those of Texas. The court said:

> It appears that in performing under the contract a considerable number of Marketers' sales and deliveries of merchandise would directly and necessarily relate to interstate commerce.
>
> \* \* \* \* \* \*
>
> The record does not show to what extent the commerce affected was intrastate and thus subject to Texas law.

The court held that Marketers' summary judgment proof had not established "that the contract was intrastate as to performance or that the transactions contemplated by and carried out under the contract were essentially intrastate." The court also held an issue of disputed fact existed as to the question of whether the guarantee of Levit and Womack was executed prior to and was independent of the contracts. In a per curiam opinion, the Supreme Court of Texas refused Marketers' application for writ of error, no reversible error. 506 S.W.2d 579.

On remand, the case was tried before a jury and submitted on 51 special issues. The jury found, *inter alia*, that: (1) Marketers owed E.F.I. $27,269.80; (2) E.F.I. granted Marketers an exclusive distributorship for the sale of its products for an area including Texas under the December 1969 contract and August 1970 contract but not under the May 1968 letter agreement; (3) the letter agreement and the two contracts contemplated Marketers would serve as an exclusive distributor for the sale of E.F.I. products in an area including Texas; (4) the personal obligation of Levit and Womack to pay for E.F.I. products was part of the consideration for the May 1968 letter agreement; (5) the March 1969 guarantee agreement of Levit and Womack was part of the consideration for the December 1969 and August 1970 contracts; (6) the activities of E.F.I. in Texas were more than occasional and isolated; and (7) Marketers' sales of E.F.I. products were made 10 percent in Texas and 90 percent outside of Texas. Based upon this verdict, the court entered judgment that E.F.I. recover from Marketers, Levit, and Womack, jointly and severally, the sum of $27,269.80, plus interest and costs.

■ Womack has not appealed from that judgment. Marketers and Levit appeal on seven points of error. Points one, two, and three complain of the court's error in overruling Marketers' motion for judgment and granting E.F.I.'s motion for judgment because the agreements to grant Marketers an exclusive dealership of E.F.I.'s products in Texas were in violation of the Texas antitrust laws and thus void and unenforceable. Points four through seven assert that it was error to enter judgment against Levit because his personal obligation to pay for products sold by E.F.I. to Marketers was part of the consideration for the May 1968 letter agreement, his guarantee agreement was part of the consideration for the contracts of December 1969 and August 1970, and these agreements were in violation of the Texas antitrust laws and are thus void and unenforceable. We sustain these points.

Section 15.02(b) of the Texas Business and Commerce Code Annotated (1968) defines a trust as:

> a combination of capital, skill, or acts by two or more persons to
>
> (1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market or transportation, or the free pursuit of a lawful business; or
>
> \* \* \* \* \* \*
>
> (3) prevent or lessen competition in
>> (A) the manufacture, transportation, sale, or purchase of tangible personal property . . . . .

Section 15.04 of the Code declares illegal and prohibits every trust defined in section 15.02, and provides that every agreement violating the prohibition against trusts is void and unenforceable in law or equity.

The agreements on their faces show a combination of capital, skill, and acts by the parties to restrict trade and commerce, and to prevent competition in the sale of tangible personal property. It is undisputed that the contracts made Marketers the exclusive distributor for certain E.F.I. products. As to those products, E.F.I. was limited to one distributor in Texas as well as almost all of the rest of the United States.

■ An agreement between a foreign supplier and a Texas distributor which gives the distributor exclusive sales rights within a territory in Texas is unenforceable. *Sherrard v. After Hours, Inc.,* 464 S.W.2d 87, 89 (Tex.Sup.1971); *Climatic Air Distrib. v. Climatic Air Sales,* 162 Tex. 237, 241, 345 S.W.2d 702, 704 (1961).

The finding of the jury that 10 percent of Marketers' sales of E.F.I. products were made in Texas and 90 percent were made outside of Texas shows that the agreement had a direct relation to interstate commerce. But simply because interstate commerce may be affected, the courts of Texas are not prohibited from giving effect to its antitrust laws. *Standard Oil Co. v. Tennessee,* 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1909); *Gulf, C. & S. F. Ry. v. State,* 72 Tex. 404, 413, 10 S.W. 81, 85 (1888); *Elray, Inc. v. Cathodic Protection Serv.,* 507 S.W.2d 570, 573 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); *State v. Southeast Tex. Chap. Nat'l Elec. Contractors Ass'n,* 358 S.W.2d 711, 714 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.), *cert. denied,* 372 U.S. 969, 83 S.Ct. 1094, 10 L.Ed.2d 131 (1963).

In its previous review of this case, the supreme court directed the courts on remand to consider the question of whether this contract, which violates the public policy of Texas, may be enforced in the state's courts. 506 S.W.2d at 580. The court said it was reserving that question because "state courts ordinarily will not enforce rights existing under laws of other jurisdictions when to do so would violate the public policy expressed in the statutes of the state of the forum." *Griffin v. McCoach,* 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); *Bothwell v. Buckbee-Mears Co.,* 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277 (1927); *Byrd v. Crazy Water Co.,* 140 S.W.2d 334 (Tex. Civ.App.—Dallas 1940, no writ).

■ We find this case falls within the rule announced by the court. The contract called for performances in violation of our local antitrust laws. The courts of Texas will not enforce such contracts, regardless of their validity in another state. *Byrd v. Crazy Water Co., supra,* at 336; *J.R. Watkins Co. v. McMullan,* 6 S.W.2d 823, 824 (Tex.Civ.App.—Austin 1928, no writ). The Supreme Court of the United States has held this position to be within the constitutional power of the Texas courts. *Griffin v. McCoach, supra,* at 506, 61 S.Ct. at 1027, 85 L.Ed. at 1486.

■ Appellee presents two counterpoints. In its first counter-point, it asserts the Texas antitrust laws are not applicable to this transaction because it had a patent on the goods which were the subject of the sale and that the patent owner had the exclusive sales rights to the product which it could grant to Marketers. The First Court of Civil Appeals dealt with this question in its previous opinion. It held that while a patentee may impose restrictions upon the assignee of the patent, it cannot impose restrictions upon one who buys an already manufactured article. 492 S.W.2d at 306–07. The point is overruled.

The second counter-point asserts that Marketers was not entitled to any offset against its account owing to E.F.I. In view of our disposition of the case, we find it unnecessary to determine this question.

The judgment of the trial court is reversed, and judgment is rendered that appellee E.F.I., Inc. take nothing by its suit against appellants M.I.I. and George Levit. The judgment as to W. V. Womack is affirmed.