The **STATE** of Texas, Appellant,

v.

**COCA COLA BOTTLING COMPANY OF the SOUTHWEST and Dr. Pepper Company, Appellees.**

No. 04–85–00032–CV.

Court of Appeals of Texas, San Antonio.

Aug. 21, 1985.

Rehearing Denied Oct. 14, 1985.

Paul D. Rich, Steven Baron, Austin, for appellant.

Gregory S.C. Huffman, Louise Ellen Teitz, Marshall M. Searcy, Raymond E. La-Driere, II, Dallas, J. Burleson Smith, Keith E. Kaiser, Cox & Smith, San Antonio, for appellees.

Before CADENA, C.J., and CANTU and TIJERINA, JJ.

TIJERINA, Justice.

In this case, § 15.05(d) of the Texas Free Enterprise and Antitrust Act of 1983, TEX. BUS. & COM.CODE ANN. § 15.01 *et seq.* (Vernon Supp.1985), was declared unconstitutional. Appellant's petition sought to divest Coca Cola Bottling Company of the Southwest of assets acquired from Dr. Pepper Company and Dr. Pepper Bottling. The trial court sustained appellee's special exception on constitutional grounds and ordered the cause of action dismissed with prejudice. We reverse and remand.

The State's pleadings alleged that the purpose of the lawsuit was to maintain and promote economic competition in the soft drink industry in the San Antonio area. Specifically the petition asserted that appellees violated section 15.05(d) of the Texas Free Enterprise and Antitrust Act, *supra*, by executing the following acquisitions agreements: (1) "Asset Purchase Agreement," under which Coca Cola acquired vending machines, vehicles, real estate, and certain intangible assets from Dr. Pepper Bottling and Dr. Pepper Company; and (2) "Dr. Pepper Bottlers License Agreement," under which Coca Cola Bottling acquire a license to carbonate, bottle, sell, and distribute Dr. Pepper in an exclusive territory in the San Antonio area. It was further urged that these agreements constituted anticompetitive acquisitions that would lessen competition substantially in the soft drink industry in the San Antonio area.

Appellees filed special exceptions claiming that section 15.05(d) of the TEX.BUS & COM.CODE ANN., *supra*, on which the State based its cause of action, was unconstitutional under the U.S. CONST. art. VI, cl. 2, the supremacy clause, and under U.S. CONST. art. I, § 8, cl. 3, the commerce clause. The trial court sustained these specific special exceptions filed by both appellees.

Our initial task is to determine whether federal antitrust legislation preempts § 15.05(d) of Texas Free Enterprise and Antitrust Act. The state argues that the challenged provisions of Texas Free Enterprise

Act and the provisions of the Clayton Act, 15 U.S.C.A. § 18 (West 1973 and Supp. 1985), are similar, harmonious, not competitive, and therefore valid. Appellees contend that the merger and acquisition restrictions prescribed by the state statute are in direct conflict with the Clayton Act and the Soft Drink Interbrand Competition Act (Soft Drink Act), 15 U.S.C. §§ 3501–03. They specifically allege that § 15.05(d) of the Texas antitrust statute impermissibly regulates, and that it disrupts the congressional purpose in the federal regulation of the soft drink industry. Appellees further urge that the federal statute impliedly preempts state regulations governing mergers and acquisitions. Section 15.05(d) Texas Free Enterprise and Antitrust Act provides in relevant part:

It is unlawful for any person to acquire directly or indirectly, the whole or part of the stock or other share capital or the assets of any other person or persons, where the effect may be to lessen competition substantially in any line of trade or commerce.

The supremacy clause of the United States Constitution provides:

This Constitution and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ..., any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. The Supreme Court has promulgated the test for the determination of preemption issues as follows:

The first inquiry is whether Congress, pursuant to its power to regulate commerce, U.S. CONST. art. I, § 8, has prohibited state regulation of the particular aspects of commerce involved in this case.... [W]hen Congress has 'unmistakably ... ordained,' *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.

*Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 613–14 (1977).

The relevant part of the Clayton Act provides:

No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C.A. § 18 (West Supp.1985).

■ "State antitrust statutes are not designed as a means for the regulation of the public market, nor as an attempt to control the price of goods offered for sale, but to suppress trusts, secure the benefits arising from competition in trade, prevent monopolies, and protect the people from the possible tyranny and oppression of combined wealth." *Monopolies, Etc.* 54 Am.Jur.2d § 452 (1971). "The purpose of [state antitrust] statutes is to secure competition and preclude combinations which tend to defeat it.... There is nothing in the Constitution of the United States which precludes a state from adopting and enforcing such policy." *International Harvester Co. v. Missouri*, 234 U.S. 199, 209, 34 S.Ct. 859, 862, 58 L.Ed. 1276 (1914).

■ The United States Supreme Court in *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), considering a Minnesota statute being challenged under the supremacy clause, stated:

Often Congress does not clearly state in its legislation whether it intends to

preempt state laws; and in such instances, the courts normally sustain local regulation of the same subject matter unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.

*Id.* at 504, 98 S.Ct. at 1190. However, the Supreme Court has been consistently concerned only with state statutes which substantially affect commerce, i.e., where the burden imposed on interstate commerce is excessive in relation to the local interests served. *See Edgar v. Mite Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Thus, it appears that a state statute or regulation with only incidental effects on interstate commerce, regulated evenhandedly to effectuate a legitimate local interest, would not be subject to preemption under the supremacy clause. *See Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); *Los Alamos School Board v. Wugalter,* 557 F.2d 709, 714 (10th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 455 (1977).

The legislative history of the federal antitrust laws clearly indicates that Congress did not reserve the exclusive regulation of mergers and acquisitions to the exclusion of the States. The purpose of the Sherman Antitrust Act was to supplement the enforcement of established rules of the Common and Statute law of the several states dealing in antitrust matters. 21 Cong.Rec. 2, 456–57 (1890). The purpose of the Clayton Act was to supplement the Sherman Antitrust Act. *See* Report of the Senate Committee on the Judiciary; S.Rep. No. 698, 63d Cong., 2d Sess. 1 (1914). We do not conclude from the provisions of the federal antitrust laws that exclusive power, jurisdiction and authority to regulate mergers and acquisitions are vested in the Federal Trade Commission or the U.S. Attorney General.

In the instant case the State seeks to regulate the acquisition by the Coca Cola Bottling Company of the Southwest of the assets of Dr. Pepper Company and Dr. Pepper Bottling, in the San Antonio area only. It is evident that the Texas Free Enterprise Act was patterned on section 7 of the Clayton Act. There is similarity of purpose, identical language and the mandatory provision of section 15.04, *supra,* that the act be construed in harmony with federal judicial interpretations of comparable antitrust statutes.

The next question to be determined is whether section 15.05(d), *supra,* is impliedly preempted because of alleged conflicts with the Soft Drink Interbrand Competition Act. In 1980, Congress enacted the Soft Drink Interbrand Competition Act (Soft Drink Act), 15 USCA § 3501 (West 1982), "to clarify the circumstances under which territorial provisions in licenses to manufacture, distribute, and sell trademarked soft drink products are unlawful under the antitrust laws." 1980 U.S.CODE CONG. & AD.NEWS 2373. Congress passed this Act to abrogate a Federal Trade Commission ruling that territorial restrictions in the soft drink industry violated the federal antitrust laws; the Federal Trade Commission had applied an improper legal standard in evaluating the territorial exclusivity provisions.

■ Section 3501 of the Soft Drink Act provides in relevant part:

Nothing contained in any antitrust law shall render unlawful the inclusion and enforcement in any trademark licensing contract or agreement, pursuant to which the licensee engaged in the manufacture (including manufacture by a sublicensee, agent or subcontractor), distribution, and sale of a trademark soft drink product, of provisions granting the licensee the sole and exclusive right to manufacture, distribute, and sell such product in a defined geographic area or limiting the licensee, directly or indirectly, to the manufacture, distribution, and sale of such product only for ultimate resale to consumers within a defined geographic area: *Provided, That such product is in substantial and effective com-*

*petition with other products of the same general class in the relevant market or markets.* (Emphasis added.)

The Act further defines the term "antitrust law" to mean the Sherman Act (15 U.S.C. § 1, *et seq.* ), the Clayton Act (15 U.S.C. § 12, *et seq.*), and the Federal Trade Commission Act (15 U.S.C. § 41, *et seq.* ) It is apparent that Congress closely adhered to the "rule of reason" used by the Supreme Court as the appropriate antitrust analysis of restrictions under the Sherman Act. "Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

A recent article defining the criteria for the standard of reasonableness stated: "A determination of reasonableness generally entails a comparative analysis of the effect of any resulting restraint in the relevant market." Selinger, *Sherman Marches on Austin: Some Comments About the New Texas Antitrust Act,* 47 TEX.B.J. 56 (1984). The relevant market must be defined by the court in terms of both geography and product or services. Absent such a delineation, there is no point of reference for measuring a company's ability to lessen competition, control prices, or exclude competitors. *U.S. v. Grinnell, Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Thus, it appears that under the compelling standards mandated by the Soft Drink Act, the critical question is whether the product is "in substantial and effective competition with other products of the same general class in the relevant market or markets." We do not perceive any potential competitive harm. Accordingly, we conclude that section 15.05(d) of Texas Free Enterprise and Antitrust Act is not repugnant to section 7 of the Clayton Act or the Soft Drink Interbrand Competition Act and therefore is not preempted. The first assignment of error is sustained.

We next review the trial court's ruling that TEX.BUS. & COM.CODE ANN. § 15.-05(d), Texas Free Enterprise and Antitrust Act, is unconstitutional under the commerce clause of the United States Constitution. U.S. CONST. art. I, § 8, cl. 3 provides that the Congress shall have power:

[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes, ...

The commerce clause of the U.S. Constitution was designed in part to prevent trade barriers that had undermined efforts of the fledgling states to form a cohesive whole following their victory in the revolution. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 807, 96 S.Ct. 2488, 2496, 49 L.Ed.2d 220 (1976). The review of constitutional questions involving the supremacy clause and the commerce clause are interrelated. Thus the precise question that the Texas antitrust statute unconstitutionally burdens interstate commerce is reviewable under the same standard. In *National City Lines, Inc. v. LLC Corp.,* 687 F.2d 1122 (8th Cir.1982), the court found that the Missouri Takeover Act was invalid under the supremacy clause and the commerce clause. *See also Matuszak v. Houston Oilers, Inc.* 515 S.W.2d 725, 728 (Tex. Civ.App.—Houston [14th Dist.] 1974, no writ).

A state is not generally prohibited from giving effect to its antitrust laws because the regulation affects interstate commerce. *Standard Oil Co. v. Tennessee,* 217 U.S. 413, 30 S.Ct. 543, 54 L.Ed. 817 (1910); *M.I.I. v. E.F.I., Inc.,* 550 S.W.2d 401, 404 (Tex.Civ.App.—Houston [14th Dist.] 1977), *cert. denied,* 435 U.S. 1008, 98 S.Ct. 1879, 56 L.Ed.2d 390 (1978). In this case both sides agree that the question of whether the Texas antitrust law at issue imposes a burden on interstate commerce should be reviewed under the test promulgated by the U.S. Supreme Court in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970):

Where the statute regulates evenhandedly to effectuate a legitimate local public

interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

\* \* \* \* \* \*

[T]he extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

The case at bar raises several questions: (1) Does the challenged state statute impose a burden on interstate commerce; (2) If so, is that burden clearly excessive; (3) What is the nature of the local interest; and (4) Could that local interest be promoted with lesser impact on interstate activities.

In *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), the Supreme Court addressed some of these questions. In that case, a Maryland statute prohibited producers or refiners of petroleum products from operating retail service stations within the state and required that the producers or refiners extend voluntary price reductions uniformly to all service stations supplied. The Maryland statute was challenged under the commerce clause. The Court stated:

> The fact that the burden of the divestiture requirements falls solely on interstate companies ... does not lead, either logically or as a practical matter, to a conclusion that the State is discriminating against interstate commerce at the retail level.... *[W]e cannot adopt appellants' novel suggestion that because the economic market ... is nationwide, no State has the power to regulate* the retail marketing of gas.

\* \* \* \* \* \*

[T]his Court has only rarely held that the Commerce Clause itself pre-empts an entire field from state regulation, and then only when a lack of national uniformity would impede the flow of interstate goods.

\* \* \* \* \* \*

In the absence of a relevant congressional declaration of policy, or a showing of a specific discrimination against, or burdening of, interstate commerce, we cannot conclude that the States are without power to regulate in this area.

\* \* \* \* \* \*

[I]f an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed.

Appellant argues that the issuance of territorial licenses by the two nationwide soft drink companies and the movement of syrup and other materials clearly involve interstate commerce and affect the supply and demand relationship of the interstate market in these goods. They further contend that the Attorney General of Texas "may halt indefinitely" a nationwide merger if he finds the Texas portion in violation of the Texas statute and that there is a possibility that the statute is being applied unconstitutionally. "This sort of hypothetical conflict is not sufficient to warrant preemption." *Exxon v. Governor of Maryland, supra,* at 131, 98 S.Ct. at 2216.

■ In this case it is undisputed that the relevant federal acts do not contain the required congressional declaration of policy which specifically prohibits state activity. There was no specific showing that the burden on interstate commerce, if any, was clearly excessive or that the Texas antitrust laws has a demonstrable effect on the interstate flow of goods. Without such a showing, we can only conclude that the Texas statute has a rational relationship to a legitimate State interest, i.e., the maintenance and promotion of economic competition in trade and commerce occurring wholly or partly within the state. Accordingly, we hold that the trial court erroneously held that TEX.BUS. & COM.CODE ANN. § 15.05(d) was unconstitutional under the commerce clause.

The judgment is reversed and the cause remanded.

CADENA, Chief Justice, concurring.

I concur in the result, since the challenged order is one sustaining special exceptions to the pleading of the State of Texas. I find nothing in such pleadings which support the trial court's conclusion that the Texas statute is unconstitutional. Any determination of the validity or invalidity of the Texas statute necessarily rests on the facts of the case. I would make no sweeping declarations concerning the validity of the statute in the absence of evidence establishing the effect of the challenged transaction as applied to the facts of this case. It is not the office of a special exception to obtain a ruling based on facts not established by the challenged pleading. The Texas statute is not unconstitutional on its face, and the pleaded facts are insufficient to support a finding of unconstitutionality.

CANTU, J., joins.